NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| E.S., by and through her parents and guardians, To.S. and Ti.S., individually, on behalf of similarly situated individuals, and derivatively on behalf of the companies MARSH & MCLENNAN COMPANIES, HEALTH & WELFARE BENEFITS PROGRAM, *Plaintiff*, v. MARSH & MCLENNAN COMPANIES, INC. BENEFITS ADMINISTRATION COMMITTEE, THE MARSH & MCLENNAN COMPANIES HEALTH & WELFARE BENEFITS PROGRAM, MARSH & MCLENNAN COMPANIES, INC., and AETNA LIFE INSURANCE COMPANY, *Defendants*. | Civil No.: 2:17-cv-03351 (KSH) (CLW) **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I. Introduction**

On May 11, 2017, plaintiff E.S. brought a putative class action under the Employment Retirements Security Act of 1974 ("ERISA") against defendants Marsh & McLennan Companies, Inc. Benefits Administration Committee, the Marsh & McLennan Companies Health & Welfare Benefits Program, Marsh & McLennan Companies, Inc., and Aeta Life Insurance Company ("Aetna") (collectively, "defendants"). The complaint alleged that defendants improperly denied E.S.'s claim for medical care provided by an out-of-network residential treatment facility by using a "hidden, 'administrative' exclusion" that was not part of the terms of her Marsh & McLennan

Companies Health & Welfare Plan (the "M&M Plan"). (D.E. 1, Compl. ¶¶ 9-11.) The complaint set forth the following proposed class definition:

> All individuals:
>
> (1) who have been, are, or will be participants or beneficiaries in the Marsh McLennan Companies Health & Welfare Benefit Programs administered by Aetna at any time since January 1, 2014 and/or the relevant statute of limitations;
>
> (2) who have received, require, or are expected to require out-of-network residential psychiatric treatment services; and
>
> (3) whose request for coverage of the out-of-network residential psychiatric treatment was "administratively excluded" based upon requirements that are not part of the terms of the Plan document.

(*Id.* ¶ 17.)

The complaint asserted: (1) a claim for breach of fiduciary duties under ERISA §§ 404(a) and 502(a)(2), 29 U.S.C. §§ 1104(a)(1) and 1132(a)(2), for "failing to act in accordance with the documents and instruments governing the Plan" (Compl. ¶¶ 34-43); (2) a claim for recovery of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (*id.* ¶¶ 44-46); and (3) a claim to enjoin acts and practices in violation of terms of the plan and to obtain other appropriate equitable relief, under ERISA § 502(3), 29 U.S.C. § 1132(a)(3) (*id.* ¶¶ 47-49). Defendants moved to dismiss counts one and three. (D.E. 17.) After hearing oral argument on January 18, 2018, the Court denied the motion, concluding that "all three counts have viability and should be preserved at this point." (D.E. 89, Transcript 58:11-12.)

On July 13, 2018, E.S. filed an amended complaint (D.E. 75, Am. Compl.) prompted by her discovery "that Aetna, the claims fiduciary for the [M&M Plan], implemented a standard claims adjudication process that fundamentally violates ERISA and its governing regulations"—a process that was not limited to the M&M Plan. (D.E. 68-2, Pl. Br. in Supp. Mot. for Leave to Amend 1.) E.S. amended the complaint to "expand the class against Aetna to seek redress for

2

beneficiaries under all the self-insured plans that Aetna administers who are subject to the same flawed claims process." (*Id.* 5.) The amended complaint adds an "Aetna Self-Insured Class," with the following class definition:

> All individuals:
>
> (1) who have been, are, or will be participants or beneficiaries in a self-insured ERISA plan administered by Aetna at any time since January 1, 2014 and/or the relevant statute of limitations;
>
> (2) who have received, require, or are expected to require out-of-network residential treatment services from licensed residential treatment facilities or centers;
>
> (3) who are under a plan that provides coverage for residential treatment, but does not contain a specific definition of "residential treatment facility" or "treatment facility" in the governing plan documents; and
>
> (4) whose request for services was denied, or would be denied, under Aetna's internal criteria for residential treatment, such as that found in Aetna's "Criteria for Recognizing Non-Contracted Residential Treatment Facilities," "Aetna Standard," "ePolicies" or similar criteria that do not appear in the plan.

(Am. Compl. ¶ 19.) E.S.'s three original claims remain unchanged in the amended complaint except to the extent that each now expressly incorporates the Aetna Self-Insured Class. (Am. Compl. ¶¶ 59, 68, 71.)

Aetna moves to dismiss all amendments to the original complaint for two reasons: "as a matter of law, Aetna is not responsible for the plan disclosures that are the root of Plaintiff's amendment"; and assuming *arguendo* that Aetna is a proper defendant, the amended complaint fails "to allege sufficient facts to support [E.S.'s] new, expansive theory." (D.E. 76-1, Moving Br. 2-3.) In opposition, E.S. contends that Aetna is recasting her amended complaint as a failure to disclose case when in fact "what E.S. and the putative class complain of is Aetna's breach of its duty to properly adjudicate and process claims under the actual terms of the Plan, not a failure to disclose (non-existent) Plan terms." (D.E. 78, Opp. Br. 5.)

For the reasons discussed below, the Court will grant Aetna's motion to dismiss.

**II.     Factual Background**

The amended complaint alleges the following factual basis for E.S.'s claims. E.S. is the 18-year-old daughter and dependent of To.S. and Ti.S. and resides in Kitsap County, Washington. (Am. Compl. ¶ 1.) Through To.S.'s employment, E.S. is a beneficiary, as defined by ERISA § 3(8), 29 U.S.C. § 10002(8), of the M&M Plan, which is an employee welfare benefit plan under ERISA and provides component benefits under a single plan. (*Id.* ¶¶ 1-2.) In 2016, the M&M Plan included, as a component benefit, four plan options—the $350, $800, $1500, and $2850 deductible plans. (*Id.* ¶ 2.) The schedule of benefits in these plans differ only in the amount of deductible. (*Id.*)

A copy of the M&M Plan document is appended to the amended complaint. (D.E. 75-1, Ex. A.) The amended complaint alleges—and the M&M Plan document confirms—that the Marsh & McLennan Companies, Inc. Benefits Administration Committee ("M&M BAC") is the M&M Plan's "Plan Administrator" and named fiduciary under ERISA, assigned "full discretion and authority to control and manage the operation and administration of each individual welfare plan[] that form[s] the [M&M Plan] except to the extent authority has been granted to the Claims Administrator [Aetna] for adjudication of claims under such welfare plans." (Am. Compl. ¶ 3; quoting M&M Plan at 41.) Further, the M&M Plan identifies Marsh & McLennan Companies, Inc. as the "Plan Sponsor" and named fiduciary under ERISA (*id.* ¶ 4), and Aetna as the claims administrator or claims processing fiduciary for the component benefit in which E.S. is enrolled (*id.* ¶ 5). At the heart of the amendments is the following allegation:

> In addition to Aetna's role as the Claims Administrator for the M&M Plan, Aetna acts as the Claims Administrator for other ERISA-governed self-insured plans (the "Aetna Self-Insured Plans"). As the Claims Administrator for the M&M Plan and the Aetna Self-Insured Plans, Aetna has adopted, and follows, a uniform set of

criteria for recognizing when and under what circumstances non-contracted residential treatment benefits should be covered.

(*Id.* ¶ 5.)

The M&M Plan provides coverage for medically necessary in- and out-of-network residential psychiatric treatment, offering a lower percentage of coverage for out-of-network treatment. (*Id.* ¶ 9.) E.S. alleges that when she sought coverage for medically necessary treatment at a properly licensed out-of-network residential psychiatric treatment facility, her claim was denied on the grounds that "the treatment was excluded under the terms of the M&M Plan." (*Id.* ¶ 10.) Defendants claimed that the reason for denial was because "the out-of-network facility did not meet staffing and credentialing required by the M&M Plan." (*Id.*) E.S. asserts that "the exclusion relied upon by Defendants to deny E.S.'s request for coverage is not part of the 'terms' of the M&M Plan," and was "improperly imported into the M&M Plan by Aetna as part of its standard, uniform process of adjudicating coverage of out-of-network residential treatment facility claims under all the plans where it acts as the Claims Administrator." (*Id.* ¶¶ 11-12.) The amended complaint describes Aetna's claims adjudication process as follows:

> [Aetna] has codified this process in "detailed steps" contained in a document that sets forth "Criteria for Recognizing Non-Contracted Residential Treatment Facilities." Under this uniform process, if services are requested for an out-of-network residential treatment facility and the plan does not contain a specific definition for "residential treatment facility" or "treatment facility" then Aetna does not look to see if the service would meet the commonly understood meaning of the phrase "residential treatment facility" or "treatment facility." Nor does Aetna look to see if the service was being provided by an entity licensed by the state where the service was delivered to see if it was a "residential treatment facility" or "treatment facility" as defined by state law. Instead, Aetna's stated uniform practice requires it to utilize general language in the plan that it believes supports its ability to use generic claim determination, payment and audit procedures and/or cost control measures. If such general language exists in the plan's governing documents, then Aetna will apply detailed, hidden and internal criteria to constrain and limit the definition of "residential treatment facility" as if these criteria were actually part of the governing plan. The hidden, internal definition contain[s] numerous specific conditions that may result in disqualification, ineligibility, denial, loss, forfeiture,

suspension, offset and/or reduction of benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of benefits contained in the plan. Finally, Aetna specifically instructs its claim processors to misrepresent the actual source of the exclusion: "Don't offer the ePolicies criteria but rather always refer to the plan document language as the claims coverage source."

(*Id.* ¶ 12.)

E.S. asserts that Aetna's use of "hidden, undisclosed exclusions" violates "special rules under ERISA . . . that apply to the disclosure of coverage of out-of-network providers." (*Id.* ¶ 14 (citing 29 C.F.R. § 2520.102-3(j)(3)-3(l)).) E.S. alleges that these violations have required that she and other putative class members pay for their residential treatment services out-of-pocket. (*Id.* ¶ 44.)

### III. Legal Standard

Aetna's motion to dismiss is brought under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. To survive dismissal, the targeted amendments "must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is one that permits the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Fundamentally, the plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

## IV. Discussion

### A. ERISA Framework

"ERISA is a 'comprehensive legislative scheme' designed to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries.' " *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 449 (3d Cir. 2018) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)). The statutory scheme "is built around reliance on the face of written plan documents," requiring every employee benefit plan to be "established and maintained pursuant to a written instrument." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100–01 (2013) (internal citations omitted). "The plan, in short, is at the center of ERISA." *Id.* at 101.

ERISA affords employers "large leeway to design disability and other welfare plans as they see fit . . . [a]nd once a plan is established, the administrator's duty is to see that the plan is maintained pursuant to that written instrument." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013) (citations omitted). As the Third Circuit has noted, ERISA "neither mandates the creation of pension plans nor dictates the benefits to be afforded once a plan is created. Only the words of the [p]lan itself can create an entitlement to benefits." *Hein v. F.D.I.C.*, 88 F.3d 210, 215 (3d Cir. 1996) (citations omitted).

ERISA's civil enforcement provision allows a cause of action for benefits due under terms of an employee benefit plan. 29 U.S.C. § 1132(a)(1)(B)-(a)(3) (2019). Underscoring the importance of the written plan, the first provision allows a participant or beneficiary to file a civil action in order "to recover benefits due to him **under the terms of [her] plan**, to enforce [her] rights **under the terms of the plan**, or to clarify [her] rights to future benefits **under the terms of the plan**." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). Recovery under section 502(a)(1)(B) requires a plaintiff to " 'demonstrate that the benefits are actually 'due'; that is, he or she must

7

have a right to benefits that is legally enforceable against the plan' and that the plan administrator improperly denied him or her those benefits." *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 11-2775, 2012 WL 762498, at *13 (D.N.J. Mar. 6, 2012) (Simandle, J.) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006)). The second provision allows a participant, beneficiary, or fiduciary "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

Under ERISA, "[t]he plan's administrator, a trustee-like fiduciary, manages the plan, follows its terms in doing so, and provides participants with the summary documents that describe the plan (and modifications) in readily understandable form." *CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011). ERISA defines the plan's "administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A). Where the plan does not name an administrator, the default administrator under ERISA is the plan's sponsor, and when the sponsor "cannot be identified, such other person as the Secretary may be regulation prescribe." *Id.*

Relatedly, and relevant to E.S.'s first claim, ERISA also establishes standards of conduct for plan fiduciaries. Section 404 requires fiduciaries to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). A fiduciary is defined as anyone who "exercises any discretionary authority or discretionary control respecting management of such plan . . . or has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

8

B. **Analysis**

As set forth above, E.S.'s amended complaint introduces what it terms the "Aetna Self-Insured Class," effectively converting E.S.'s original plan-specific complaint—which alleged a "plan-wide systemic failure to properly apply the terms of the [M&M] Plan" and sought relief on behalf of a putative class of participants *in E.S.'s plan*—into what E.S. herself describes as a complaint that targets Aetna for the alleged "breach of its duty to properly adjudicate and process claims under the actual terms of the Plan." (D.E. 78, Opp. Br. 5.)

Aetna seeks dismissal of the amendments in E.S.'s complaint on two grounds: first that as the claims administrator for E.S.'s benefit plan, Aetna is not a proper defendant; and second that even if the Court found Aetna is a proper defendant, E.S. fails to plead sufficient facts to support the amendment. (Moving Br. 2-3.)

**1. Improper Defendant**

The long and short of Aetna's improper defendant argument is that the focus of E.S.'s amended complaint is a failure to disclose in the summary plan description ("SPD") the criteria Aetna used in denying claims submitted by members of the self-insured class.[1] Responsibility for such disclosures rests on the plan *administrator*, and Aetna is the *claims* administrator.

---

[1] The amended complaint cites to several ERISA regulations related to disclosure requirements. Under the section titled "Nature of the Case," paragraph 14 provides that "special rules under ERISA apply to the disclosure of coverage of out-of-network providers," identifying two such rules: (1) 29 C.F..R. § 2520.102-3(j)(3), which requires that the description of plan benefits inform participants and beneficiaries whether, and under what circumstances, coverage is provided for out-of-network services; and (2) 29 C.F.R. § 2520.102-3(l), which provides that the information should be conveyed through a statement "clearly identifying circumstances which may result in disqualification, ineligibility, or denial . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of benefits." (Am. Compl. ¶ 14.) These regulations are again referenced under the "Factual Background" section of the amended complaint, *id.* ¶¶ 48-49, and under the first claim for breach of fiduciary duties, *id.* ¶ 58.

9

The Court agrees with E.S. that Aetna is recasting or misconstruing what her complaint is about. E.S. maintains that:

> the issue here is Aetna's application of internal "exclusions" in the processing of claims that do not exist, anywhere, in the controlling Plan document or SPD. This is a failure of the duty to properly adjudicate and process claims under the terms of the Plan.

(Opp. Br. 5; *see also id.* 22 ("The problem here is that Aetna's "Sample" criteria is not part of the Plan/SPD at all, and Aetna cannot use non-plan exclusionary criteria to deny otherwise covered claims.").)

As such, much if not all of the moving brief's argument and cited case law about the improper defendant issue is irrelevant. The alleged wrongdoing in the amended complaint has not changed; the focus is not on the SPD (and as E.S. argues, the Plan itself, as here they are one in the same) other than how it defines—or more specifically, does not restrictively define—residential treatment facilities. Framed thus, Aetna is a proper defendant.

What does require scrutiny, however, is that the amendments leverage Aetna's alleged wrongdoing as asserted in the original complaint—a breach of fiduciary duty with respect to the M&M Plan—to create another class numbering in the "hundreds (if not thousands) of other participants and beneficiaries" enrolled in plans where Aetna serves as claims administrator. (Opp. Br. 3.) This prompts the more relevant question of whether by using Aetna, acting in a fiduciary role of claims administrator, as the sole nexus for defining the expanded class, E.S. has rendered her complaint deficient under Rule 8(a)(2)'s pleading standard that requires "enough facts to state a claim of relief that is plausible on its face," *Twombly*, 550 U.S. at 570, giving rise to Aetna's second argument.

## 2. Failure to State a Claim

According to E.S., the galvanizing event for the amendments was the revelation obtained in discovery that Aetna uses a claims processing approach with a "fatal flaw," purportedly its undisclosed, home-grown definition of what constitutes a covered out-of-network residential treatment facility that Aetna applies to the otherwise unrestricted language in the SPD. (Opp. Br. 2-3.) As evidence of this violative practice, E.S. proffers the "mysterious 'Sample' list of exclusions and limitations that E.S. extracted from Aetna" in discovery. (*Id.* 13 (citing D.E. 78-2, Spoonemore Decl., Ex. A).)

Building on this evidence, the amended complaint alleges that in addition to being "the claims administrator or claims processing fiduciary" for the component benefit in which E.S. is enrolled,

> Aetna acts as the Claims Administrator for other ERISA-governed self-insured plans (the "Aetna Self-Insured Plans"). As the Claims Administrator for the M&M Plan and the Aetna Self-Insured Plans, Aetna has adopted, and follows, a uniform set of criteria for recognizing when and under what circumstances non-contracted residential treatment benefits should be covered. According to Aetna's 2017 Form 10-K there are approximately 14.2 million enrollees in plans that are claims-administered by Aetna.

(Am. Compl. ¶ 5.) This allegation anchors the expansion of class liability in the amended complaint. Under the heading 'Nature of the Case,' E.S. asserts that she "seeks to end the Defendants' standard practice of excluding coverage of medically necessary residential psychiatric treatment based upon a hidden, 'administrative' exclusion." (*Id.* ¶ 9.) E.S. further alleges that

> Aetna has adopted, and applies, a uniform approach to determining whether non-contracted residential treatment facilities are entitled to coverage under the Aetna Self-Insured Plans, including the M&M plan. It has codified this process in "detailed steps: contained in a document that sets forth "Criteria for Recognizing Non-Contracted Residential Treatment Facilities."

(*Id.* ¶ 12.) The avowed target of the amended complaint, according to paragraph 18, is "Defendants' failure to comply with the terms of the M&M plan," **and** "Aetna's failure to properly administer the Aetna Self-Insured Plans and follow applicable federal law." (*Id.* ¶ 18.)

The amended complaint cannot be faulted for a failure to identify the specific source of its allegations about the peculiarities of Aetna's claims-processing approach—a document in the administrative file (the "Sample") and documents produced in discovery (D.E. 78-1, 78-2, 78-3, 78-5) that evidence a set of criteria Aetna employed in the claims process that were material to its denial of E.S.'s benefits claim. (Am. Compl. ¶ 12.) What is not identified in any way, however, is language in any other self-funded plan for which Aetna is the claims administrator that allegedly provoked the same application of the same criteria with the same result—in other words, the specific facts that would make plausible E.S.'s charge that in adopting its allegedly uniform codified criteria, Aetna breached its fiduciary duties in scores of unidentified self-funded plans covering 14.2 million enrollees.

Thus when Aetna argues in its moving brief that the amended complaint does not identify any plans other than the M&M Plan to which E.S.'s expanded theory would apply, Aetna properly may conclude that E.S. "apparently proposes to figure all of this out—or make Aetna figure it out—in discovery." (Moving Br. 10.) As it stands, the amended complaint is vulnerable to Aetna's argument that the allegations in the amended complaint are "threadbare," and insufficient "to move [E.S.'s] claim from speculative to plausible under [*Iqbal* and *Twombly*]." (*Id.* 3.)

As the Court noted in rejecting Aetna's improper defendant argument, E.S.'s core theory is that "Aetna's application of internal 'exclusions' in the processing of claims that do not exist, anywhere, in the controlling Plan document or SPD" constitutes a breach of its duty to "properly adjudicate and process claims under the terms of the Plan." (Opp. Br. 5.) To work, this theory

must have a Plan or SPD to fasten on, and aside from the M&M plan, E.S. offers none. Aetna's allegedly flawed step-by-step instructions for processing out-of-network residential treatment facility claims, set forth in Aetna's internal documents, direct the processor to "[r]esearch the benefit to determine if the plan supports treatment at the residential level of care"; then if so in the second step, "[r]esearch the benefit to determine if the plan document provides a definition of residential treatment facility or treatment facility." (D.E. 78-3, Spoonemore Decl., Ex. B; *see also* Opp. Br. 11-12.) Both steps, according to E.S in her opposition brief, comport with ERISA. (Opp. Br. 12.) But at the third step, triggered when the plan does not provide such a definition, E.S. argues "the wheels come off" because Aetna applies "its own detailed exclusions . . .—criteria and definitions that do not appear anywhere in the plan documents themselves." (*Id.*)

But Aetna properly points out that E.S. fails to identify a single offending plan other than M&M's, let alone provide excerpted language from other plans, or actual plan documents, to plausibly allege that Aetna's offending process took place. (D.E. 83, Reply 6.) Beyond conclusions, there is no "there there" to give the amendments life for purposes of pleading sufficiency.

The problematic nature of E.S.'s citing to a single plan in a complaint that seeks to sweep in an untold number of plans becomes particularly troublesome when determining the pleading sufficiency of Count 2, brought under 29 U.S.C. § 1132(a)(1)(B), ERISA's civil enforcement provision. As noted above, recovery under the enforcement provision requires that a plaintiff " 'demonstrate that the benefits are actually 'due'; that is, [the plaintiff] must have a right to benefits that is legally enforceable against the plan' and that the plan administrator improperly denied him or her those benefits." *Broad St. Surgical*, 2012 WL 762498, at *13 (quoting *Hooven*, 465 F.3d at 574 (3d Cir. 2006)). Quoting *Broad St. Surgical*'s holding, Aetna argues that "without

information as to the terms and provisions of the plan documents, the complaint fails to state a claim upon which relief can be granted." (Moving Br. 14.)

In *Broad Street Surgical*, the plaintiff sought to add a claim under ERISA's civil enforcement provision challenging defendant insurer United Health Group's claims practices concerning reimbursement of pain management services. 2012 WL 762498, at *13. The proposed amended complaint identified 13 plans at issue, citing to language from the SPDs of only four of the plans. *Id.* Denying the motion, the court held that, with respect to the four plans, "these allegations do not establish, or even address, whether pain injections are a covered benefit under the plan," and "generally citi[ing] to the SPD" does not "provide the court with enough factual information to determine whether the pain injections were indeed covered services under the plan." *Id.*, at *14. Additionally, the court noted that plaintiffs did not attach the SPDs for the court's review. *Id.* "As to the remaining nine ERISA plans, the Plaintiff provides no support in its complaint for these claims because the Plaintiff does not provide any facts supporting its allegations that benefits are due and owing under the plans." *Id.*, at *15. The court concluded that "[w]ithout information as to the terms and provisions of the plan documents, the complaint fails to state a claim upon which relief can be granted." *Id. See also Sanctuary Surgical Ctr., Inc. v. UnitedHealth Grp., Inc.*, No. 10-81589, 2013 WL 149356, at *5-6 (S.D. Fla. Jan. 14, 2013) (granting motion to dismiss for failure to state a claim in a case involving 300 ERISA plans, citing a "fundamental pleading deficiency" where the complaint included language from six exemplar SPDs, "alleg[ing] 'upon information and belief' that 'all of the health insurance plans at issue define covered benefits in a manner consistent with the language' of the six exemplar plans . . . without providing any factual basis for this supposition.").

E.S. argues that "at this stage of the class action," she "does not have access to all these [other] plans." (Opp. Br. 24.) She further asserts that no authority "requires a plaintiff in a class action to attach all impacted plans to survive a motion to dismiss," a requirement that would be "the death knell for ERISA class actions" and immunize "claims fiduciaries from class-wide remedies for violations of ERISA." (*Id.* n.13.) To be eligible for "class-wide remedies for violations of ERISA" the pleadings must establish there actually are violations. E.S. is not excused from the well-established plausibility pleading standard, which demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Aetna asserts that E.S.'s failure to identify specific plan language is problematic "[g]iven the innumerable variations in plan and plan disclosures." (Moving Br. 3; Reply 7.) These variations directly affect what a plan participant might "reasonably expect" a plan to cover, essential to the success of E.S.'s lawsuit. (Moving Br. 12-13.) After all, as Aetna argues, there is language in the M&M Plan that Aetna will rely on in arguing against E.S.'s claims (Moving Br. 12-13; Reply 8-10). The question also arises whether the amended complaint plausibly alleges that the criteria unearthed in discovery constitute a codified, uniform course of action on Aetna's part.

The amended complaint plausibly pleads the existence of a set of criteria Aetna used as claims administrator for the M&M Plan, but it fails to provide context for the allegedly uniform and flawed application of those criteria on the class-wide basis pleaded here. As such, Aetna's motion is granted.

## V. Conclusion

For the reasons set forth above, Aetna's motion to dismiss the amendments to E.S.'s original complaint is GRANTED. An appropriate order will follow.

August 19, 2019

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J